**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerardo Roberto Zepeda, | No. CV-16-00226-TUC-JAS (BPV) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Gerardo Roberto Zepeda's Pro Se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty). (Doc. 1). Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. 8), and Petitioner filed a Reply/Traverse to the States' Answer to Petition for Writ of Habeas Corpus (Doc. 15). This matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure. (Doc. 4). For the reasons stated herein, the Magistrate Judge recommends that the District Court deny the Petition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was indicted in Arizona Superior Court, Pima County cause number CR 20063374, on one count of first-degree murder and one count of kidnapping. (Exh. C, Doc. 9-3).

At trial, witness Charles Thrash testified for the state. The Arizona Court of

Appeals summarized his testimony[1] as follows:

> On the night of Saturday, August 26, 2006, [the victim] and his friend [Thrash] went to a local bar. After drinking at the bar until 2:00 a.m. on Sunday, August 27, [the victim] and [Thrash] went to [Thrash's] house to smoke crack cocaine, accompanied by the bartender []. Shortly thereafter, Zepeda telephoned [Thrash], saying he had seen [Thrash's] truck at the bar earlier and asking whether [Thrash] had any drugs. When [Thrash] told Zepeda that [the victim] had drugs and money, Zepeda responded he would "be right over." Upon arriving at [Thrash's] house, Zepeda accosted [the victim], who had been smoking alone in a different room than [Thrash] and [the bartender]. Hearing a "thump" and "rustling noise[s]," [Thrash] followed the noises to discover Zepeda restraining [the victim] and holding a gun while another man was leaving with something in his hand. When [Thrash] asked what was going on, Zepeda pointed the gun at him and demanded he leave the room. As [Thrash] left the room, he heard Zepeda yelling, "[G]et me the tape."
>
> Several minutes later, when [Thrash] confronted Zepeda as he was leaving, Zepeda angrily declared, "[The victim] didn't have shit on him, this is on you, now you owe me." [Thrash] then returned to his bedroom and continued smoking with [the bartender] until both fell asleep. . . .When [Thrash] awoke later that day and checked on [the victim], he found [the victim] lying on his stomach on the floor under a mattress, his hands and feet bound with pipe tape and an electrical cord. [Thrash] moved the mattress, touched [the victim's] feet, and concluded [the victim] was dead. [Thrash] and [the bartender] left the house.
>
> Later that day, [Thrash] again spoke with Zepeda by telephone. Zepeda "screamed" at [Thrash], asking him whether he had "[gotten] the body out of there" and clean[ed] up the mess."

---

[1] Petitioner challenges the credibility of Thrash's testimony, which he alleges was inconsistent and motivated by his plea agreement. (Doc. 1-3 at 5-21). The credibility of a witness is a factual decision that is more appropriately addressed by the trial court. *See Miller–El v. Cockrell,* 537 U.S. 322, 339 (2003). The Court will not make a credibility determination, but simply reiterates Thrash's testimony before the trial court, as stated by the Court of Appeals. Factual findings are given the presumption of being correct, and Petitioner has not demonstrated by clear and convincing evidence that the Court of Appeals summary of Thrash's testimony is erroneous. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985); *cf. Rose v. Ludy*, 455 U.S. 509, 519 (1982).

> [Thrash] returned to his house but did not disturb [the victim's] body. On Tuesday, Zepeda returned to his house and asked [Thrash] whether he had disposed of [the victim's] body. Zepeda then began throwing things at [Thrash], telling [Thrash] to pack, and collecting items to load into Zepeda's truck. After Zepeda left, [Thrash] called his mother and told her there was a dead body at his house. [Thrash's] mother called law enforcement authorities.

(Exh. B, Doc. 9-2 at 3-5); (*see also*, Exh. DD, Doc. 12-7).

The medical examiner determined that the victim's death was caused by asphyxiation. (Exh. B, Doc. 9-2 at 5). Since the victim was found face down on carpet, the medical examiner opined that a blow to the head could have rendered the victim unconscious. With a mattress placed on top of him, his position and the weight of the mattress could have limited his breathing, causing him to asphyxiate on the carpeting. (*Id.*).

The state also called Tucson Police Department Crime Lab's Latent Print Examiner Steven Skowron to testify. Skowron stated that the Crime Lab decided not to test the duct tape from the victim's body for fingerprints so that it could be tested for DNA instead. (Exh. G, Doc. 9-7 at 4-5, 12-13).

On October 19, 2007, a jury found Petitioner guilty of second-degree murder and unlawful imprisonment. (Exh. A, Doc. 9-1 at 2). The trial court sentenced him to concurrent terms of 22 and 4.5 years' incarceration respectively. (*Id.* at 2-5).

### a.  *Direct Appeal and Post-Conviction Relief*

Petitioner filed a Notice of Appeal to the Arizona Court of Appeals on October 22, 2007. (Exh. D, Doc. 9-4).

Petitioner subsequently filed a Limited Rule 32 Petition for Post-Conviction Relief ("PCR") in the trial court on May 16, 2008. (Exh. F, Doc. 9-6). The limited petition claimed that newly-discovered evidence could have changed the outcome of Petitioner's trial. (*Id.* at 7). After trial, the state had revealed an investigation into Skowron's drug use and his failure to renew his fingerprint certification. (*Id.* at 6-7). Defense counsel argued that because Skowron may have

been intoxicated during trial, and was not certified when he testified, this rendered him incapable of giving expert testimony. (*Id.* at 6).  The trial court denied Petitioner's limited petition on July 24, 2008. (Exh. I, Doc. 9-9). Petitioner then appealed the issue to the Arizona Court of Appeals on August 18, 2008. (Exh. J, Doc. 10-1).

The Arizona Court of Appeals consolidated Petitioner's direct appeal and PCR Petition for Review. (Exh. K, Doc. 10-2). Petitioner's Opening Brief in the Court of Appeals raised four issues: (1) whether the trial court erred by not instructing the jury on superseding cause; (2) whether it erred by instructing the jury on the lesser-included offenses of second-degree murder, manslaughter, and negligent homicide; (3) whether it erred by not granting a mistrial or, in the alternate, not excusing a juror who saw a transcript not admitted into evidence; and (4) whether the trial court abused its discretion when it allowed late disclosure of exculpatory phone records. (Exh. L, Doc. 10-3 at 21).

The Arizona Court of Appeals denied Petitioner's appeal. (Exh. B, Doc. 9-2).

Petitioner filed a Petition for Review in the Arizona Supreme Court on May 11, 2009 raising the same issues. (Exh. O, Doc. 11-1). On September 3, 2009, the Arizona Supreme Court summarily denied the petition. (Exh. P, Doc. 11-2).

On September 12, 2013, Petitioner filed another PCR petition alleging his appellate counsel was ineffective because there was not sufficient evidence presented at trial to determine the cause of death, and counsel failed to challenge causation and failed to employ an expert to help cross-examine the medical examiner. (Exh. R, Doc. 11-4 at 17); (Exh. X, Doc. 12-1 at 4). An evidentiary hearing was held. (Exh. W, Doc. 11-9). The trial court denied the petition. (Exh. X, Doc. 12-1 at 7). Petitioner appealed to the Arizona Court of Appeals (Exh. AA, Doc. 12-4), who summarily denied the petition (Exh. BB, Doc. 12-5).

### b.  *Instant § 2254 Habeas Petition*

On April 22, 2016, Petitioner filed the instant habeas petition,

alleging four grounds for relief. (Doc. 1). First, the trial court erred when it refused to instruct the jury on superseding cause, in violation of Petitioner's due process rights.[2] Second, the trial court erred by giving a jury instruction on the lesser-included offenses of second-degree murder and negligent homicide. Third, the trial court violated his Fifth and Sixth Amendment rights when it denied Petitioner's request for a mistrial or, in the alternate, the dismissal of a juror who examined evidence not admitted. Finally, Petitioner "was denied his 5th Amendment due process right to present a complete defense and his 6th Amendment Right to confront witnesses against him."

## II.    STANDARD OF REVIEW

A writ of habeas corpus under § 2254 may be evaluated by a federal court only when a petitioner alleges "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, a §2254 habeas petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster,* 563 U.S. 170 (2011). When evaluating a federal habeas petition, the federal courts "owe a 'double dose of

---

[2] Given the context and issues raised in previous state petitions, the Court determines that Petitioner made an error when he stated the "Trial Court erred in *not* instructing the jury over Appellant's objection on less[e]r included offenses." (Doc. 1 at 6) (emphasis added). The trial court did instruct on the lesser-included offenses of second degree-murder, manslaughter, and negligent homicide - two of which Petitioner challenges in Ground Two. Since Petitioner's Ground One proceeds to ask "Whether the trial court erred in not instructing the jury on superseding cause" the Court determines that this is the cause of action that Petitioner intended to raise in Ground One. (*Id.*).

deference' to the state court's judgment." *Long v. Johnson,* 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque,* 659 F.3d 957, 964 (9th Cir. 2011). A state court's decision is unreasonable if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 407-08 (2000). An unreasonable determination must be more than simply incorrect; it must be "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 10 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)).

### a. Exhaustion of State Remedies

For the District Court to review a writ of habeas corpus, a petitioner must show he has exhausted his state remedies by fairly presenting the same issues to the state's highest court. 28 U.S.C. § 2254(b)(1)(A); *see also Coleman v. Thompson,* 501 U.S. 722, 731 (1991). To fairly present a claim, petitioner must "describe[] the operative facts and legal theory upon which his claim is based." *Duncan v. Henry*, 513 U.S. 364, 370 n.1 (1995) (quoting *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986). The requirement to exhaust state remedies makes certain that the state courts are given an opportunity to address constitutional violations without the federal court's intrusion. *Rose v. Lundy,* 455 U.S. 509, 515 (1982).

There are two exceptions to the exhaustion requirement: (1) when "there is an absence of available State corrective process" and (2) when "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Procedural default also precludes review in habeas. However, unlike exhaustion, wherein a federal claim has never been presented in the state court, a procedural default occurs when "a state court has been presented with a federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. . . . Thus, in some

circumstances, a petitioner's failure to exhaust a federal claim in state court may cause a procedural default." *Casset v. Stewart,* 406 F.3d 614, 621 n.5 (9th Cir. 2005) (internal citations omitted).

### b. Timeliness

Petitioner's habeas corpus petition was filed in 2016, therefore it is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Under the AEDPA, a person incarcerated by the state must file a § 2254 petition within one year "from the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2).

The parties do not dispute the timeliness of the petition. Petitioner had one year after his conviction and sentence became final to file his federal habeas petition. Petitioner's filed his instant § 2254 habeas petition on April 22, 2016, and his petition for review was summarily denied by the Arizona Supreme Court on July 21, 2015. (Exh. BB, Doc. 12-5). Therefore, Petitioner's habeas corpus petition was filed within one year and is timely.

### III.    JURY INSTRUCTION: SUPERSEDING CAUSE

Petitioner's first ground claims that the trial court erred when it refused to give a jury instruction on superseding cause of death. This claim was properly exhausted in the state court.

Petitioner asserts that two superseding events occurred warranting the instruction: (1) a significant amount of time passed between Petitioner's act and the victim's death, and (2) Thrash lifted and replaced the mattress on top of the victim after Petitioner's assault. (Doc. 15 at 7).

The appellate court determined that the trial court correctly declined to give the instruction because no unforeseeable or extraordinary event occurred

subsequent to Petitioner's conduct severing the causal chain. (Exh. B, Doc. 9-2 at 6-7). Citing state case law, the Court of Appeals explained:

> A defendant "is entitled to a jury instruction on any theory reasonably supported by the evidence." *State v. Tschilar,* 200 Ariz. 427, ¶ 36, 27 P.3d 331, 340 (App. 2001). A defendant is not liable for harm to a victim when the harm resulted from a "superseding cause." *State v. Bass*, 198 Ariz. 571, ¶¶ 11, 14, 12 P.3d 796, 800-01 (2000). A superseding cause exists when an abnormal and unforeseeable event occurs after the defendant's actions, causing the victim's ultimate harm. *See id.; State v. Slover,* No. 2 CA-CR 2007-0379, ¶ 11, 2009 WL 295027 (Ariz. Ct. App. Feb. 9, 2009).

> . . .

> [A]n intervening event is not a superseding cause when a defendant has increased the risk that another's conduct would result in death or when the defendant's conduct itself created the risk that resulted in the victim's death. *See Slover, 2009* WL 295027 ¶ 11. Here, Zepeda accosted [the victim], who was intoxicated; hit him on the head hard enough to render him unconscious; placed him on his stomach on the carpet; bound his feet and hands to restrict his movement; and put a mattress on top of him. That [the victim] asphyxiated after being left in this state was neither unforeseeable [n]or extraordinary; rather Zepeda's actions created the foreseeable risk of [the victim's] death or at least increased the foreseeable risk that [the victim's] intoxication could contribute to his death.

(*Id.* at 6, 8).

The state court's determination was not objectively unreasonable. Petitioner had a right to a jury instruction if the instruction was supported by the evidence. *State v. Anderson,* 111 P.3d 369, 385 (Ariz. 2005). Arizona law utilizes the same standard for superseding cause in both tort and criminal settings; that is, the event must be both "unforeseeable and when with benefit of hindsight it may be described as abnormal or extraordinary." *State v. Bass*, 12 P.3d at 800-01 (internal citation omitted). Even when a "defendant's act would not have caused the death of another but for the intervention of an independent force, . . . [o]nly if it was unforeseeable does the intervening force become a superseding cause, relieving

the defendant of the lethal consequences of his act." *State v. Powers*, 571 P.2d 1016, 1021 (Ariz. 1977).

Simply put, death was a foreseeable consequence when the Petitioner beat, trussed, and placed a mattress on top of the victim. Moving the mattress may have been an intervening—but not superseding—action because Petitioner's actions increased the risk that the victim would die of asphyxiation, whether or not the mattress was moved or how much time passed. The evidence did not support a superseding cause instruction, and the state court's application of the law to the facts was appropriate.

Furthermore, Petitioner fails to cite any federal law supporting his assertion that he was entitled to a jury instruction absent sufficient evidence supporting a superseding cause. *See* 28 U.S.C. § 2254(d)(1). Therefore, the Court cannot find that the state court's determination was contrary to federal law or an unreasonable application of the law to the facts of the case.

### IV.   JURY INSTRUCTION: LESSER-INCLUDED OFFENSE

Petitioner's Ground Two claims that the trial court inappropriately instructed the jury on the lesser-included offense of second-degree murder and negligent homicide. (Doc. 1 at 7). During trial, Petitioner moved for a judgment of acquittal on first-degree, premeditated murder because the state had not presented proof of premeditation. (Exh. B, Doc. 9-2 at 9). This motion was granted, however, the trial court determined that the evidence did support a lesser-included jury instruction on second degree murder, manslaughter, and negligent homicide. (*Id.*).

A federal constitutional claim must be explicitly expressed in both the state appeal and federal habeas petition to ensure the state court has an opportunity to address the constitutional issues prior to the District Court. *Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). The United States Supreme Court explained that this requirement is necessary to address concerns of comity:

If state courts are to be given the opportunity to correct alleged violations

of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Id.; see also, Arvizu v. Ryan,* No. 4:13-CV-00102-JAS (BGM), 2016 WL 536575, *42, report and recommendation adopted, No. 4:13-CV-00102-JAS (BGM), 2016 WL 891680 (D. Ariz. March 9, 2016) (failure to notify state or federal court of a federal claim and "expecting the court to read beyond the four corners of the petition is insufficient.").

In this instance, neither Petitioner's § 2254 habeas petition (Doc. 1), memorandum in support (Doc. 1-3), nor his reply (Doc. 15) specifically state that a constitutional violation occurred when the trial court instructed the jury on the lesser-included offenses of second-degree murder and negligent homicide. Nor was a constitutional claim raised at the state level in Petitioner's opening appellate brief (Exh. L, Doc. 10-3), reply (Exh. N, Doc. 10-5), or his appeal to the Arizona Supreme Court (Exh. O, Doc. 11-1 at 3).

Furthermore, Petitioner would now be procedurally barred from raising the constitutional issue in the state court. *See* Ariz.R.Crim.P. 32.2(a)(3) ("A defendant is precluded from relief under Rule 32 based on any ground . . . waived at trial, on appeal, or in any previous collateral proceeding."); *see also Harris v. Reed*, 489 U.S. 255, 269-70 (1989) (O'Connor, J. concurring) (noting that if a claim was not fairly presented in the state court, then the federal court must determine whether there are state remedies available). The Court, therefore, cannot grant habeas relief on this ground. 28 U.S.C. §§ 2254(a), 2241(c)(3).[3]

However, even if Petitioner had properly claimed a violation of federal law occurred, his claim is meritless because the state court's determination was not an unreasonable application of federal law or facts. When a jury instruction is not

---

[3] Insofar as Petitioner attempts to raise a claim of actual innocence of the lesser-included offense, this issue was not raised in any previous proceeding and Petitioner has not attempted to show either cause for his failure or prejudice. *See Teague v. Lane,* 489 U.S. 288, 298 (1989) (petitioner's failure to raise claims in the state appellate court prevents the District Court from reviewing in habeas unless petitioner can show cause and prejudice).

objectively unreasonable, the District Court's inquiry into whether the state court decision was contrary to clearly established Federal law halts, and no relief is available under § 2254. *See Waddington v. Sarausad*, 555 U.S. 179, 192 (2009).

"When assessing a petition for a writ of habeas corpus, we thus 'look to [state] law only to establish the elements [of the crime] and then turn to the federal question of whether the [state] court was objectively unreasonable in concluding that sufficient evidence supported [its decision].'" *Boyer*, 659 F.3d at 965.

Under Arizona law, even if the court grants a judgment of acquittal on a greater offense, instructions on the lesser-included offense are permitted if supported by the evidence. *See* e.g., *State ex rel. Thomas v. Duncan,* 165 P.3d 238, 243 n.7 (Ariz. App. 2007). The appellate court found that under the Arizona Rules of Criminal Procedure, the trial court was required to instruct on all lesser-included offenses to the charged offense because the second-degree murder instruction was supported by the evidence and was a necessarily included offense to the charge of first-degree murder. (Exh. B, Doc. 9-2 at 10).  The Arizona Court of Appeals also dismissed the negligent homicide jury instruction claim, stating that "[i]n finding [Petitioner] guilty of second-degree murder, the jury 'necessarily rejected [the] lesser-included crimes' of manslaughter and negligent homicide and therefore, 'any error as to instructions on [those] offenses is necessarily harmless." (*Id.* at 9) (citing *State v. Amaya-Ruiz,* 800 P.2d 1260, 1282 (Ariz. 1990)).

In Arizona, a defendant commits second degree murder if, without premeditation, the defendant: (1) "Intentionally causes the death of another person;" (2) "Knowing that [his] conduct will cause death or serious physical injury, [he] causes the death of another person;" or (3) "Under circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person." A.R.S. § 13-1104(A). The appellate court considered the evidence presented in this case, and determined that the facts supported an instruction on second-degree murder and negligent homicide.

This Court finds the appellate court's decision was substantiated by the evidence

and correctly identified the governing law. Petitioner's actions supported an instruction under any of the second-degree murder subsections. Beating, tying, and limiting an individual's movement by placing a heavy object on top of them could easily be considered reckless, creating a grave risk of death. Furthermore, a reasonable person would likely know that an injury to the head combined with intoxication, unconsciousness, binding, and breathing constriction could cause death. Moreover, it's even arguable that Petitioner's actions were *intended* to cause death.

Furthermore, the state court's determination that the instruction on negligent homicide was harmless is not in conflict with federal law. Petitioner must demonstrate that he is incarcerated in violation of the laws of the United States. Since Petitioner was never convicted of negligent homicide, he is not in custody in violation of federal law. *See* 28 U.S.C. § 2254(a). The state court did not err when it determined that there was sufficient evidence to support the lesser-included offenses. Since the determination was a reasonable application of law to the evidence, this count should be dismissed.

### V.   DENIAL OF MOTION FOR MISTRIAL DUE TO JUROR MISCONDUCT

Petitioner next claims that his due process rights were violated when the trial court denied Petitioner's motion for mistrial and allowed a juror to remain on the panel even though he had access to evidence not admitted. (Doc. 1 at 8). After the jury broke for deliberations, one juror indicated that a transcript had been inadvertently provided to the jury, and he had perused the document. (Exh. FF, Doc. 12-9 at 3-4). When asked, the juror indicated he merely saw the transcript, read part of the front page, then informed the bailiff of the error. (*Id.* at 4-5). Defense counsel asked for a mistrial, or in the alternate, to have the juror dismissed. (*Id.* at 6). The court determined that the document was insignificant to the case, and the juror was not could remain fair and impartial despite the exposure. (*Id.* at 4-5). The trial court denied the motion, allowing the juror to remain on the panel. (*Id.* at 8).

The Court of Appeals noted that the trial court would be required to grant a mistrial if there was any indication whatsoever that the information could cause

harm to the Petitioner. (Exh. B, Doc. 9-2 at 13).  The appellate court stated there was no indication that the juror made use of any improper information or that the juror was being untruthful. (*Id.*)

The Ninth Circuit has stated, "when information not placed in evidence reaches the jury during its deliberations, the defendant is entitled to a new trial if "there exist[ed] a reasonable possibility that the extrinsic material could have affected the verdict." *United States v. Tebha*, 770 F.2d 1454, 1456 (9th Cir. 1985). "[T]he reasonable possibility test [is] equivalent to the harmless error rule applicable to constitutional errors." *United States v. Bagley*, 641 F.2d 1235, 1241 (9th Cir. 1981) (internal quotations omitted).

Given the juror's brief exposure to the document, the fact that he only glanced at the title page, and his assertion that he could remain impartial, the state court's determination that no prejudice occurred was reasonable. Furthermore, the legal determination was not contrary to federal law. Therefore, this claim should be denied.

### VI.  RIGHT TO PRESENT COMPLETE DEFENSE AND CONFRONT WITNESSES

Petitioner's Ground Four merely asks, "Whether Zepeda was denied his 5th Amendment due process right to present a complete defense and his 6th Amendment Right to confront the witnesses against him." His factual support simply refers the Court to his state record and memorandum in support of his § 2254 habeas petition. (Doc. 1-3).

A § 2254 habeas petition must clearly state all grounds of relief accompanied by facts which support of each of these grounds. *See Mayle v. Felix,* 545 U.S. 644, 661 (2005). The District Court is not required "to review the entire state record of habeas corpus petitioners to ascertain whether facts exist which support habeas relief." *Adams v. Armontrout,* 897 F.2d 332, 333–34 (8th Cir. 1990) (federal habeas petition must state specific facts which enable the court to determine the merits of petitioner's claim based on the petition alone); *see also Williams v. Kullman*, 722 F.2d 1048, 1051 (2nd Cir. 1983) ("despite our firm

conviction that the pleading requirements in habeas corpus proceedings should not be overly technical and stringent, it would be unwise to saddle district judges with the burden of reading through voluminous records and transcripts in every case"); *Moore v. Swenson,* 361 F.Supp. 1346, 1351 (E.D.MO. 1973) ("Petitioner must set out his grounds specifically without reference to another lengthy document."); *but see Regains v. Robert*, No. 11 C 5445, 2012 WL 2513935, at \*6 (N.D. Ill. June 27, 2012) (allowing review of habeas claim but denying relief when petitioner specifically requested the court incorporate arguments from the state appeal).

Petitioner's § 2254 habeas petition does not include any details supporting Ground Four.  (Doc. 1 at 9). In the area designated for supporting facts, Petitioner merely states, "See attached Opening Brief, Answering Brief and Reply Brief in Appendix B-C-D and Memorandum." (*Id.*) Even when the Court considers all of Petitioner's attachments, it is impossible for the Court to discern the factual basis for his claim that he was denied his right to confront witnesses or present his defense. Petitioner's memorandum is predominantly argument about Grounds One through Three and the credibility of Thrash's testimony. As stated earlier, the function of habeas review is not to make credibility determinations. *See Miller–El,* 537 U.S. at 339. Petitioner's memo never addresses how or what specific facts he alleges demonstrate a violation of his right to a defense and confrontation.

Petitioner has not sufficiently pleaded facts supporting Ground Four. The Court has reviewed all of Petitioner's filings and exhibits and cannot discern where the factual basis for his claim lies, or whether his claim and supporting facts were raised in the state court. As such, the Court recommends the District Court deny this claim.

## VII.    RECOMMENDATION

The Magistrate Judge recommends that the District Court enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty). (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure

72(b)(2), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objection. Filed objections should use the following case number: **No. CV-16-00226-TUC-JAS**.

Failure to timely object to the factual and legal determinations of the Magistrate Judge may waive Petitioner's right to *de novo* review.

Dated this 20th day of April, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge